# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALARD-GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br><br>Respondents. | Case No. 1:26-cv-04863-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENTS' MOTION TO DISMISS, GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF Nos. 1, 9)<br><br>ORDER DENYING PETITIONER'S MOTION FOR EXPEDITED CONSIDERATION<br><br>(ECF No. 13) |

Petitioner is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that Respondents' motion to dismiss be denied, the petition for writ of habeas corpus be granted, and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who entered the United States as a minor and was granted lawful permanent resident status. On May 17, 1996, Petitioner was convicted of aggravated

\\\

felony of child sexual abuse. On January 7, 1998, Petitioner was ordered removed to Cuba by an immigration judge ("IJ"). (ECF No. 1 at 4, 31; ECF No. 9-2 at 1, 2.[1])

Upon release from serving his criminal sentence, Petitioner entered immigration custody and was detained for approximately fourteen months before being released on an order of supervision in June 2001. (ECF No. 1 at 4–5, 33.) The petition alleges that following his release, Petitioner complied with all supervision requirements for over two decades. (Id. at 5.)

The petition alleges that on November 4, 2025, Petitioner was "summoned to a local police station under false pretenses," where Department of Homeland Security ("DHS") officers took Petitioner into custody without a warrant and without any prior notice of revocation or changed circumstances. (ECF No. 1 at 6.) On December 4, 2025, an IJ denied Petitioner's motion to reopen. (ECF No. 9 at 2.) Petitioner filed an appeal, which is still pending before the Board of Immigration Appeals ("BIA"). (ECF No. 1 at 8–9; ECF No. 9 at 2.) On January 16, 2026, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida. (ECF No. 1 at 18.)

On June 24, 2026, Petitioner filed the instant petition for writ of habeas corpus and a motion for expedited consideration, which the Court construed as a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On June 26, 2026, the Court denied the motion for TRO as untimely. (ECF No. 6.) On July 20, 2026, Respondents filed a response and motion to dismiss. (ECF No. 9.) On August 5, 2026, Petitioner filed a traverse. (ECF No. 11.) On September 10, 2026, Petitioner filed a notice that the United States District Court for the Middle District of Florida granted Petitioner's request to dismiss his first habeas petition. (ECF No. 14.)

## II.

## DISCUSSION

In the petition, Petitioner raises the following claims for relief: (1) prolonged detention beyond six months without foreseeable removal violates due process; (2) revocation of Petitioner's order of supervision violated regulations; (3) the revocation notice identifies no

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

changed circumstances; (4) proposed removal to Mexico is not authorized by Petitioner's removal order; and (5) continued detention serves no legitimate purpose. (ECF No. 1 at 13–18.)

**A. Motion to Dismiss**

Respondents move to dismiss the petition pursuant to the first-to-file rule due to Petitioner's earlier-filed habeas petition in the United States District Court for the Middle District of Florida. (ECF No. 9 at 2–3.) However, in light of the dismissal of Petitioner's earlier-filed petition, (ECF No. 14), the undersigned recommends denying Respondents' motion to dismiss the petition pursuant to the first-to-file rule.

**B. Zadvydas**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

---

[2] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, Respondents argue that "Petitioner cannot establish entitlement to immediate release merely from the passage of time. Rather, the relevant inquiry focuses on whether there is a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 9 at 4.) However, the six-month presumptively reasonable detention period and "the burden-shifting framework from *Zadvydas* does not apply" to challenges to "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. . . . *Zadvydas*, relied upon by Respondents, dealt with the initial detainment of an alien awaiting removal."

Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**C. Revocation of Order of Supervision**

The petition asserts that revocation of Petitioner's order of supervision violated applicable regulations. (ECF No. 1 at 15.) Respondents do not address this issue whatsoever in their response.

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

\\\

\\\

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> > (i) The purposes of release have been served;
> > (ii) The alien violates any condition of release;
> > (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> > (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.[3]

8 C.F.R. § 241.4(*l*)(1)–(2).

---

[3] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." Khamba v. Albarran, No. 1:25-cv-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

The "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed," including that "when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 813 F. Supp. 3d at 1163 (alteration in original) (quoting Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

Respondents state:

> Here, DHS continues to pursue execution of Petitioner's longstanding final removal order, including through the process for effectuating removal to a third country if necessary. *See* Exhibit 1. Respondent's have provided and are in constant communications with Petitioner regarding his removal to Cuba or alternatively Mexico. Moreover, there is no current judicial stay preventing DHS from executing the removal order. These circumstances distinguish Petitioner's case from one in which removal efforts have reached an indefinite standstill with no reasonably foreseeable prospect of removal.

(ECF No. 9 at 4.) Respondents do not provide any further details regarding their efforts.

Although "DHS may have an informal arrangement with the Mexican government to allow third country removals to Mexico, Mexico only accepts individuals who consent to be removed there." Ortiz-Gamez v. Noem, No. 2:26-cv-01355-JLT-HBK (HC), 2026 WL 2593004, at *1 (E.D. Cal. Sept. 2, 2026) (emphasis in original). "Courts have noted that that the standing agreement between the United States and Mexico appears premised on Petitioner's compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, No. 1:26-cv-05326-DJC-JDP, 2026 WL 2327873, at *2 (E.D. Cal. Aug. 11, 2026). Here, Petitioner has refused consent to removal to Mexico. (ECF No. 11 at 5–6.)

Accordingly, the Court finds that Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i). Therefore, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted.[4] See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

**D. Pre-Deprivation Hearing**

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not

[4] In light of this conclusion, the Court declines to address Petitioner's other claims.

> provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 818 F. Supp. 3d at 1166–67 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED.
2. Respondents' motion to dismiss (ECF No. 9) be DENIED.
3. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.
4. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

Further, Petitioner's motion for expedited consideration (ECF No. 13) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 22, 2026**

/s/ Eric P. Grosjean

UNITED STATES MAGISTRATE JUDGE